FILED
 2021 Aug-10  AM 10:25
 U.S. DISTRICT COURT
     N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **CLEVELAND JENNINGS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action Number |
| ) | **7:20-cv-00716-AKK** |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY ADMINISTRATION,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Cleveland Jennings brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration. Jennings contends that the Administrative Law Judge ("ALJ") failed to properly weigh the opinions of a treating physician or to consider the impact of his chronic diarrhea, and that the ALJ should have found that he met a listing for intellectual disability. Doc. 11. Because the court agrees that the ALJ did not adequately consider Jennings's chronic diarrhea, which necessitated unscheduled bathroom breaks, the court finds that the ALJ's decision, which has become that of the Commissioner, is not supported by substantial evidence. Therefore, the court vacates the decision denying benefits and will remand this matter for further consideration.

## I.

Jennings worked custodial positions for numerous companies before the onset of his alleged disability on March 7, 2015. R. 229, 271-72, 313. In July 2016, Jennings protectively filed for Title II disability insurance benefits based on his alleged chronic diarrhea, chronic back pain, cognitive limitations, major depression, and anxiety. R. 15, 208-09, 234. After the SSA denied his application, Jennings requested a hearing before an ALJ. R. 109, 114. The ALJ subsequently issued a decision denying Jennings's claim, R. 15-30, and the Appeals Counsel denied review, R. 1, rendering the ALJ's decision the final decision of the Commissioner. Jennings then filed this action for judicial review under 42 U.S.C. § 405(g). Doc. 1. Tragically, Jennings committed suicide in September 2020 at age fifty, approximately four months after filing this action, *see* doc. 8-1, and his widow is serving as his substitute party, doc. 8-2.

## II.

This court is tasked to review whether the record contains substantial evidence to sustain the decision of the ALJ and whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129,131 (11th Cir. 1986). On appeal, the court will "review *de novo* the legal principles upon which the ALJ's decision is based." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

The ALJ's "findings are conclusive if they are supported by substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is described as, "more than a scintilla, but less than a preponderance of evidence; '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). If substantial evidence supports the ALJ's factual findings, then the court is required to affirm, even if the evidence preponderates against her findings. *See id*. This court's review should not "include deciding facts anew, making credibility determinations, or re-weighing the evidence." *Moore*, 405 F.3d at 1211. But, despite the limited scope of judicial review, "this does not yield automatic affirmance." *Lamb v. Bowen*, 847 F.2d 698,701 (11th Cir. 1988).

### III.

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 416(i)(1). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable psychological

3

abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five-step analysis. 20 C.F.R. § 404.1520. Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work, the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553,1559 (11th Cir. 1995).

## IV.

Here, the ALJ found at Step One that Jennings had not engaged in any substantial gainful activity since his alleged onset date of March 7, 2015. R. 18. At Step Two, the ALJ determined that Jennings has the severe impairments of

pancreatitis, cholelithiasis, status post stent placement in stomach, spine disorder, hypertension, anxiety, and depression. *Id.* At Step Three the ALJ determined Jennings did not meet the requirements of any of the listed impairments. *Id.* Instead, the ALJ found Jennings had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), including being able to occasionally climb, precluding ladders, and to frequently balance, kneel, crouch, crawl, and stoop. R. at 20-21. Jennings could have occasional exposure to temperature extremes but not continuous vibrations, and could not work around unprotected heights or hazardous moving machinery. *Id.* The ALJ also found that Jennings must have access to a restroom nearby and could perform simple routine jobs that do not require contact with the general public and occasional contact with coworkers. *Id*.

Proceeding to Step Four, and relying on the testimony of a vocational expert, the ALJ found that Jennings was unable to perform any past relevant work. R. at 29. Finally, based on Jennings's RFC and vocational profile and the vocational expert's testimony, the ALJ found that Jennings could perform work in the national economy, including as a work ticket distributer, padder, and router. R. at 29-30. Therefore, the ALJ concluded Jennings had not been disabled from the alleged onset date through the date of the ALJ's decision. R. at 30.

V.

Jennings contends the ALJ failed to: (1) properly weigh the opinions of one of his treating physicians; (2) account for his chronic diarrhea, which caused him to take frequent unscheduled restroom breaks; and (3) properly consider his cognitive limitations, and erred by not finding that he met the requirements Listing 12.05B. The court considers these contentions in turn.

A.

The court considers first whether the ALJ failed to properly weigh the opinions of Dr. Jacquelynn P. Luker, one of Jennings's treating physicians. Doc. 11 at 2, 9-13. "In deciding how much weight to give a medical opinion, the ALJ considers, among other things, (1) the examining relationship; (2) the treatment relationship; (3) the extent to which the opinion is supported by medical evidence and explanations; and (4) whether the opinion is consistent with the record as a whole." *Bailey v. Comm'r of Soc. Sec.*, 802 F. App'x 462, 464 (11th Cir. 2020) (citing 20 C.F.R. § 404.1527 (c)). Generally, an ALJ must afford a treating physician's opinion "substantial or considerable weight unless good cause is shown to the contrary." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019). "Good cause exists when (1) the treating physician's opinion is not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his or her own medical

records." *Id*. If an ALJ assigns less than substantial weight to the opinion of a treating physician, the ALJ must state with particularity the weight assigned to the opinion and the reasons for his decision. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). An ALJ's failure to articulate the reasons for his decision is reversible error. *Schink*, 935 F.3d at 1259.

In this case, the ALJ assigned little weight to the opinions of Dr. Luker, Jennings's primary care physician since 2015.[1] R. 25-26. Jennings argues that Dr. Luker's opinions regarding Jennings's chronic diarrhea and chronic back pain were consistent with the overall record and supported by her treatment records and those from DCH Regional Medical Center, UAB Hospital, and Tuscaloosa Surgical Center. Doc. 11 at 10. This argument falls short, however, because the issue before the court is whether substantial evidence supports the ALJ's decision, not whether evidence may support a contrary decision. *See Martin*, 894 F.2d at 1529. And, as discussed below, substantial evidence supports the ALJ's finding that Dr. Luker's opinions were inconsistent with the overall record.

---

[1] Jennings also suggests that the ALJ erred by giving partial weight to the opinions of Dr. Brittany McArthur, who completed a medical source statement on October 27, 2018 in Dr. Luker's absence. Doc. 11 at 11; *see also* R. 962. According to Jennings, the ALJ should not have given more weight to Dr. McArthur's opinions than to Dr. Luker's opinions because Dr. McArthur was not a treating physician. Doc. 11 at 11. This contention is unavailing because Dr. McArthur examined and treated Jennings on at least one occasion. *See* R. 986-87. Moreover, an ALJ may properly give less weight to a treating physician's opinions than to the opinions of examining or consulting physicians when good cause exists to do so. *See Schink*, 935 F.3d at 1259.

7

At issue here are opinions contained in reports of disability Dr. Luker completed in 2017, 2018, and 2019. *See* R. 922-29, 989-93. In each report Dr. Luker opined that Jennings had chronic and uncontrolled malabsorptive diarrhea due to short gut syndrome caused by multiple abdominal surgeries, no effective treatment existed for Jennings's condition, and Jennings's disability was permanent. R. 923, 926-27, 929, 989. In the 2017 and 2018 reports, Dr. Luker also opined that Jennings had panic attacks; could not perform consecutive tasks because he had to use the restroom every hour; could not lift more than twenty pounds; could not sit, stand, or walk for more than two hours in an eight-hour workday; and would need to work close to a restroom to accommodate his disability. R. 925, 927, 929. Then, in 2018 and 2019, Dr. Luker opined that Jennings was totally incapacitated due to his conditions, R. 924, 989, and also in 2019 Dr. Luker opined that Jennings would be unable to sit or stand for long periods of time due to his chronic back pain and diarrhea, R. 991. Dr. Luker also noted in her 2019 report that Jennings had four "loose stools daily to the point where he cannot control them [and] sometimes can't make it to the restroom." R. 989.

Good cause exists for the ALJ's decision to assign little weight to Dr. Luker's opinions. To begin, the ALJ correctly notes that Dr. Luker's opinions relating to limitations caused by Jennings's back pain appear to be based only on Jennings's subjective reports and are contrary to the objective medical evidence. *See* R. 25-26.

8

Indeed, as the ALJ found, medical records show that physicians, including Dr. Luker, treated Jennings's back pain conservatively and physical examinations generally revealed normal findings and no tenderness in Jennings's back during the relevant time. *See* R. 524, 543, 566, 583, 596, 599, 617, 632, 749, 781, 783-84, 810, 817, 827, 834, 841, 893, 936, 944. Moreover, Jennings denied back pain in at least two medical visits during the relevant time, R. 506, 542, and he does not point to any evidence related to his back pain that the ALJ failed to consider, *see* doc. 11.

Next, Jennings correctly notes that Dr. Luker's opinions relating to limitations caused by Jennings's chronic diarrhea find support in Dr. Luker's treatment records, *see* R. 516, 541-42, 746, 752, 754, 757, 758, 984; *see also* doc. 11 at 10, and that Dr. Luker consistently found on physical examination that Jennings had hyperactive bowel sounds, R. 749, 754, 757, 759, 765-66, 770, 773, 783, 786-87, 826, 833, 863, 883, 892, 935, 944, 969, 976. Still, as the ALJ found, Dr. Luker's opinions and findings are inconsistent with the observations of other physicians. *See* R. 25. For instance, physicians treating Jennings during the relevant time generally observed upon examination that Jennings's abdomen was nontender with no rebound or guarding, nondistended, and had normal bowel sounds. R. 479, 486, 511, 524, 543, 566, 576, 583, 596, 609, 617, 632, 657, 666, 698, 710, 810, 817. And, during visits to DCH Regional Medical Center in January 2016 and September 2017, Jennings denied having diarrhea as a symptom. R. 580, 809. In addition, Dr.

9

Luker's opinion that Jennings would need to use the restroom every hour, conflicts with Jennings's testimony that he uses the restroom "probably about five, maybe five or six times [a day]." R. 50, 927.

Ultimately, the ALJ considered Dr. Luker's opinions and found them inconsistent with the overall record. R. 25-26. Substantial evidence supports that assessment. Accordingly, the ALJ did not err by assigning Dr. Luker's opinions little weight.

**B.**

Jennings contends next that the ALJ erred by failing to adequately account for his chronic diarrhea. Doc. 11 at 11. The Commissioner counters that the ALJ included in the RFC that Jennings required "reasonable access to restroom facilities." Doc. 14 at 5; R. 20. But, that limitation does not account for the time Jennings would require during a workday for restroom breaks, or the frequency or scheduling of such breaks, and their impact, if any, on Jennings's employment prospects. In fact, the vocational expert testified that if Jennings's testimony was deemed credible, there would be no jobs he could perform due to his need for unscheduled restroom breaks. R. 61.

Instead of addressing the diarrhea's impact, if any, on Jennings's employability, the ALJ found that Jennings's subjective testimony about his condition was not entirely consistent with the medical evidence. R. 21. While

generally this is a valid reason to reject a claimant's contentions, in this case, however, the ALJ did not point to any objective medical evidence in the record indicating that Jennings did not suffer from chronic diarrhea and would not require unscheduled restroom breaks during the workday. To the contrary, as the ALJ recognized, Jennings's medical records reflect that he consistently reported chronic diarrhea during the relevant time.[2] *See* R. 22, 25-26, 28. Indeed, Dr. James W. Washburn, a consulting physician who reviewed Jennings's medical records at the ALJ's request, opined that Jennings had chronic diarrhea and that his frequent diarrhea required Jennings to have access to a restroom. R. 1012-14. The ALJ gave Dr. Washburn's opinion some weight, R. 27, but the ALJ did not address or follow up on Dr. Washburn's opinion indicating that Jennings would require frequent breaks in light of his frequent diarrhea, *see* R. 27, 1015. The ALJ also did not directly address or follow up on the vocational expert's testimony indicating that a need for unscheduled breaks during the workday would preclude Jennings from working. *See* R. 15-31, 61. Consequently, based on the administrative record, it is unclear if Jennings would have been able to take any unscheduled breaks to accommodate his

---

[2] As noted previously, Jennings reported that he did not have diarrhea as a symptom during visits to the Northport Medical Center Emergency Department on January 28, 2016 and September 3, 2017. R. 580, 809. Nevertheless, he indicated that he suffered from chronic diarrhea at almost all of his other medical visits during the relevant time. *See* R. 481-82, 505-06, 516, 541-42, 563, 747, 752-54, 757-59, 761, 764, 768, 755, 781-83, 786-87, 790-92, 804, 824, 826, 831, 833, 838, 842, 845, 849, 853, 856, 860-64, 867, 871, 877, 881-83, 886-87, 890-92, 908, 911, 914, 917, 919-20, 932, 941, 958, 965, 968, 972, 975, 980, 983, 985.

chronic diarrhea in the jobs the ALJ found that Jennings could perform. As a result, the ALJ's decision that Jennings was not disabled is not supported by substantial evidence.

## C.

Finally, Jennings contends that the ALJ failed to properly address Jennings's cognitive limitations and, relatedly, erred by not finding that Jennings met the requirements of Listing 12.05B for intellectual disability. To meet Listing 12.05B, Jennings must show he had:

> a full-scale IQ of 70 or below; (2) significant deficits in adaptive functioning currently manifested by extreme limitation of one or marked limitation of two of the four areas of mental functioning including (understanding, remembering, or applying information; interacting with others; persistence or pace; and adapting or managing oneself); and (3) evidence that the deficits in adaptive functioning began prior to age 22.

20 C.F.R. § 404 Subpart P, Appendix 1 § 12.05(B). An IQ score alone is not enough to establish intellectual disability "when the IQ score is inconsistent with other evidence in the record about the claimant's daily activities." *Outlaw v. Barnhart*, 197 F. App'x 825, 827 (11th Cir. 2006). Although the regulations do not define "adaptive functioning," it is typically referred to as "'the individual's progress in acquiring mental, academic, social, and personal skills as compared with other unimpaired individuals of his same age.'" *Schrader v. Acting Comm'r of the Soc.*

*Sec. Admin.*, 632 F. App'x 572, 576 (11th Cir. 2015) (quoting Soc. Sec. Admin., *Program Operations Manual System*, DI 24515.056(D)(2) (2012)).

Substantial evidence supports the ALJ's finding that Jennings did not have an impairment that equaled one of the listed impairments, including Listing 12.05B. *See* R. 18.[3] As Jennings points out, Dr. Donald Blanton, Ph.D. administered testing that revealed Jennings had a valid full-scale IQ of 61. R. 961; *see also* doc. 11 at 13. Thus, Jennings met the first prong of Listing 12.05B. However, Jennings's daily activities and work history indicate that he did not have significant deficits in adaptive functioning and, therefore, did not meet the second prong of the Listing. For example, Jennings testified that he helps his sister with cleaning the house "as much as [he] can, but [he] has to take short breaks" due to pain, and he prepares basic meals "like a cold cut [sandwich] or ramen noodles in the microwave." R. 54. Jennings also testified that he can shop for items from a store, although he cannot determine how much change he should get back when he purchases something, and he can drive and passed an oral driver's license exam. R. 56-57. In addition, Jennings's medical records during the relevant time reflect that Jennings could

---

[3] The ALJ did not expressly consider Listing 12.05B in reaching his conclusions that Jennings did not have an impairment that met or equaled one of the listings. *See* R. 18-20. That omission is not in error because "a finding that a claimant's impairments are not contained in a Listing may be implied from the ALJ's decision." *See James v. Comm'r Soc. Sec. Admin*, 657 F. App'x 835, 838 (11th Cir. 2016) (per curiam) (citing *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986))). And, as discussed above, substantial evidence supports the ALJ's implicit finding that Jennings did not meet Listing 12.05B.

follow instructions, had an intact memory, and displayed normal affect, mood, insight, and judgment. *See* R. 479, 486, 507, 524, 543, 551-52, 566, 583-84, 597, 617-18, 632, 749, 759, 766, 770, 776, 783, 792, 810, 817, 827, 834, 841, 852, 863, 873, 883, 892, 935, 969, 976, 984. Jennings also had an extensive work history prior to his alleged onset date that included positions as a commercial cleaner for numerous companies and a garbage collector for the City of Tuscaloosa, and Jennings reported to Dr. Jerry L. Hart, Ph.D. that he worked well with his supervisors and coworkers. *See* R. 29, 271, 804. This evidence indicates that Jennings could care for his personal needs, communicate effectively with others, and remember and apply basic information. Based on this record, substantial evidence supports the ALJ's finding that Jennings had only mild to moderate limitations in the four broad mental areas of functioning.[4] *See* R. 19-20. As a result, the ALJ did not err in his implicit finding that Jennings did not meet Listing 12.05B.

---

[4] *See Garrett v. Astrue*, 244 F. App'x 937, 939 (11th Cir. 2007) (holding that substantial evidence supports the ALJ's finding that a claimant did not meet Listing 12.05 in part because the claimant's ability to perform chores, cook simple meals, build model cars, go to church, play cards, walk in the mall, and watch television indicate that he lacked the required deficits in adaptive functioning); *Belton v. Berryhill*, Case No. 7:16-CV-02015-MHH, 2018 WL 1244495, at *10 (N.D. Ala. Mar. 9, 2018) (reasoning that a claimant's ability to live on her own, cook simple meals for herself, drive a car, pay bills, count change, and shop occasionally and the claimant's work history constitute substantial evidence to support the ALJ's finding that the claimant did not meet Listing 12.05(C)); *Bouler v. Colvin*, Case No. CA 14-0146-C, 2015 WL 877794, at *10 (S.D. Ala. Mar. 2, 2015)(finding that the claimant's ability to communicate effectively, care for her own personal needs and her children, drive, shop, perform simple math, and do household chores, such as cooking and cleaning, support the ALJ's finding that the claimant did not have the necessary deficits in adaptive functioning).

## VI.

In conclusion, substantial evidence supports the ALJ's findings that Dr. Luker's opinions were inconsistent with the overall record and that Jennings did not meet the requirements of Listing 12.05(b), and the ALJ applied the proper legal standards in reaching those determinations. But, as discussed above, the court finds that the ALJ did not adequately consider the impact Jennings's chronic diarrhea and his need to take unscheduled breaks had on his ability to work. Therefore, the court finds that the ALJ's decision denying disability benefits is not supported by substantial evidence. As a result, the Commissioner's final decision is due to be vacated and this matter remanded back to the ALJ for further consideration. The court will enter a separate order in accordance with this memorandum opinion.

**DONE** the 10th day of August, 2021.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE